Mr. Justice Wylie
delivered the opiuion of the court :
This is an action of ejectment, brought by the plaintiffs, as heirs at law of Joshua Pierce, deceased, to recover certain lots of land in the city of Washington, now in the possession of the defendant, and claimed by it under the will of Mr. Pierce, and certified hither from the circuit court to be heard in the first instance.
The testator died on the 11th of April, 1S69, having made his will, the 14th section of which is in the following terms, (See statement for same.)
The heirs of the testator claim that the devise of these fourteen lots is void, because, first, it attempts to create a perpetuity; and, second, that the objects of the devise are uncertain.
At the date of testator’s death the “Washington Hospital for Foundlings” was not in existence, but has been incorporated since that event, by act of Congress, and received a deed for the property in controversy from the trustees named in the devise. But it is claimed by the plaintiffs that, no time having been limited by the will within which the act of incorporation should be passed by Congress, there was a possibility that Congress might never pass the required act; or, if it should do so, the passage of the law might be deferred to so remote a future as to be beyond the limit of any life or lives in being and twenty-one years afterward.
But the rule in regard to perpetuities, we think, has no application where the immediate gift is a trust for charitable purposes, although the time for its application may be indefinite.
In Sinnett vs. Herbert, L. R., 7 Ch., 240, the lord chancellor said: “As to the difficulty from the possible remoteness of the time when her intention can be carried into effect, I think the case of the Attorney-General vs. Bishop of Chester, 1 Bro. Ch., 444, is a complete answer. There was a sum of £1,000 left for a good charitable purpose, namely, for the purpose of establishing a bishop in the King’s dominions in America. *548 There was no bishop in America. The sum, being only £1,000, was not very likely in itself to be sufficient to establish a bishop. Nothing could be more remote or less likely to happen within a reasonable period than the appropriation of that fund to that particular object. But the court did not direct any application of the fund according to the cy pres doctrine. It would not allow the fund to be dealt with immediately, but directed the fund to remain in hand for a time, with liberty to apply, because it was not known whether any bishop would be established.”
A case in its principal features much like the present was that of Chamberlain vs. Broshett, L. R., 8 Ch., 206. The testatrix, after stating that she did not .confidently feel that her family would not spend her money on the vanities of the world, Sc., gave personal estate to trustees, to make certain annual payments for charitable purposes, and then directed that, when and so soon as land should be given by any other person for that purpose, two alms-houses should be built, and the surplus appropriated in making allowances to the inmates ; and the.gift was held to be valid, as it was an immediate gift for charitable purposes, although the time of its application was indefinite.
In this case the rule was laid down by the lord chancellor in the following language: “If there was an immediate gift of the whole residue for charitable uses, the authorities mentioned during the argument — Attorney-General vs. Bishop of Chester, 1 Bro. Ch., 444; Hensharo vs. Atkinson, 3 Madd, 306, and Sinnett vs. Herbert, L. R., 7 Ch., 232, to which may be added Attorney-General vs. Craven, 21 Beav., 392 — prove that such gift was valid, and that there was no resulting trust for the next kin of the testatrix, although the particular application of the fund directed by the will would not of necessity take effect within any assignable limit of time, and could never take effect at all except on the occurrence of events in their nature contingent and uncertain. On the other hand, if the gift in trust for charity is itself conditional upon a future and uncertain event, it is subject, in our judgment, to the same rules and principles as any other estate depending for its coming into existence upon a condition precedent. If the condition is never fulfilled the estate never arises. If it *549 is so remote and indefinite as to transgress the limits of time prescribed by the rules of law against perpetuities, the gift fails ab inUio.,,
The doctrine declared by these authorities is this, as we understand it, that where there is a gift for charity it will be carried into effect by the courts unless upon its face, and certainly, it is opposed to some rule of law. If the gift be upon condition precedent and that condition have not taken place, the bequest is void. If it plainly and in terms is in violation of the rule against perpetuities, it is also void. But if, at the testator’s death, there only be a possibility of the happening of a contingency by which the gift may be postponed beyond the period prescribed in the rule against perpetuities, but that contingency in fact has not happeued, and from events which have already taken ifface cannot happen, the gift will be supported. Indeed, one branch of the rule against perpetuities has never had application to bequests in trust for charitable objects. Blackstone says “ by perpetuities (or the settlement of an interest which shall go in the succession prescribed, without any power of alienation) estates are made incapable of answering those ends of social commerce, and providing for the sudden contingencies of private life, for which property was at first established.” Book 2,p. 173. And yet for purposes of charity trusts may be created which may forever retire the given property from the power of alienation and the uses of commerce. That was the case with Girard’s will, 2 How., 127, and with McMicken’s will, 24 How., 465. In this last case the devise was to the city of Cincinnati in trust forever for the purpose of building, establishing, and maintaining, as far as practicable, two colleges for the education of boys and girls. None of the property devised or which the city might at any time purchase for the benefit of the colleges could at any time be sold. Such a trust in other cases would have been in violation of the rule against perpetuities, but as to the charity it was valid. In 2 Story’s Eq., sec. 1167, the author says: “ Again, although in carrying into execution a bequest to an individual, the mode in which the legacy is to take effect must be of the substance of the legacy; yet where the legacy is to a charity, the court will consider charity as the substance, and in such case, and in such cases *550 only, if the mode pointed out fail, it will provide another mode by which the charity may take effect, but by which no other than charitable legacies can take. A still stronger case is that if the testator has expressed an absolute intention to give a legacy to charitable purposes, but has left uncertain or to some future act the mode by which it is to be carried into effect, there the court of chancery, if no mode is pointed out, will, of itself, supply the defect and enforce the charity.”
In respect to gifts for charity, therefore, there is no place in a court of equity for the application of the rule as to perpetuities unless it appear on the face of the will itself that under no circumstances was it the intention of the testator that his bequest should operate till after the expiration of the time prescribed by the rule.
But it may be said that these doctrines are those only of the English chancery; that they depend upon the statute of the 43d Eliz., which has never been in force in this District, or in the State of Maryland, of which this District was at one time a part.
It is quite true that the doctiue of cy pres, which was greatly enlarged and developed in England under that statute, has never been followed here, except to the extent of carrying into effect the intent of the testator. That doctrine, however, so far as it depends upon the statute of Elizabeth alone, is confined to cases in which no trust is interposed, or where there is no person in esse capable of taking, or where the charity is of an indefinite nature. In such cases, the doctrine is the offspring of the statute of Elizabeth, and is not a doctrine to be applied in our courts. But where there is a trust, and the charity is defined, there is no need for any aid from the statute of Elizabeth; for the jurisdiction of the court vests on ancient and well-settled grounds independently of the statute. (See 2 Story Eq., section 1162.)
There probably never would have been any difficulty in the courts of this country in regard to questions of this character but for the decision of the Supreme Court of the United States in the case of the Baptist Association vs. Hart’s Executors, 4 Wheat, 1. The correctness of that decision very soon began to be doubted. It was commented upon, without approval, though not with any distinct dissent, by the same *551 court in the case of Inglis vs. Trustees of Sailors’ Snug Harbor, 3 Peters, 113. In this case the bequest was sustained, though to an unincorporated society, and for purposes of a general character. In Porter vs. Chapin, 6 Paige’s Ch., 619, Ch. Walworth says: “Although some doubt was thrown upon the question of charitable donations for the benefit of a community or body not incorporated, so as to be capable of taking and conveying the legal title to the property in that case, I believe it is generally admitted that the decision was wrong.” This opinion of Chancellor Walworth is quoted with approbation by the supreme court of Massachusetts, in Bartlett vs. Nye, 4 Met., 879. The decision was evidently contrary also to the opinion of Chancellor Kent, as may be seen in the second volume of his Commentaries, 285. Since then, the doctrines of that case have been distinctly called in question by the Supreme Court of the United States, in Vidal vs. Girard’s Executors, 2 How., 127, and in Perin vs. Carey, 24 How., 465, and the conclusion reached that charitable uses may be enforced in chancery under its general jurisdiction, independently of the statute of Elizabeth. The first of these two cases was from Pennsylvania, and the other from Ohio. In neither of these States was the statute of Elizabeth in force, although in both its principles are substantially administered as derived from the common law.
We have been referred to the case of Bashiell vs. The Attorney-General, 5 H. and J., 398, as authority showing that the statute of Elizabeth was never in force in Maryland, and consequently not in this District. That proposition may be admitted, and yet leave the jurisdiction of this court over the subject of charitable uses as complete and ample as that reported by the Supreme Court in the cases already referred to. The decision in that case was doubtless correct. It could not have been otherwise except under the cy pres jurisdiction which no one pretends to exist in this court, except so far as allowed by the common law. The trust in that case was, that the trustees should appropriate the fund to the feeding, clothing, and educating the poor children belonging to a named congregation, not such as the trustees might themselves select, and without any power or right given the trustees to discriminate in the objects of the charity. It is distinctly sug *552 gestecl by the court that the decision would have been differ • ent had that right and power been vested in the trustees, for then the subjects of the bounty would have been ascertained and certain.
It is the only case on the subject which we have found in the Maryland reports, and having been decided since this District became independent of that State, and in regard to-a question as to the general jurisdiction of chancery and not upon the construction of a local statute, is entitled to no greater respect in this District than the decision of that court upon any other subject; that is, it is entitled to respectful consideration, but is not obligatory.
We conclude, therefore, that the devise in question in the present case is void neither on the ground of perpetuity nor for the uncertainty of its object.
But another aspect of the case is presented on the construction to be given to the language of the devise. The trustees are, in the first place, to hold the property as and for a site for the erection of a hospital for foundlings, to be built and erected by any association, society, or institution that may hereafter be incorporated by an act of Congress as and for such hospital, and upon such incorporation upon further trust to grant and convey the said lots of ground and trust-estate to the corporation or institution so incorporated, &c. But there is a proviso to this devise which it is important to examine. The. testator foresaw that the society so incorporated might not be acceptable to the trustees. In that event he declares his wish to be that the trustees should themselves hold the property for the same purpose, that is, as a site for a foundling hospital, until a corporation was created by Congress which should meet their approval; and he gives the trustees absolute discretion on this subject. If, therefore, Congress should fail to create a corporation for the purpose, or one acceptable to the trustees, or if the grant to the future corporation should be void on the ground that no time was specified within which it was to take effect, the only consequence would be that the trustees themselves would hold the property for the same purpose, and might proceed to erect the hospital. In no event was- there to be - a resulting trust for the heirs.
*553 The proviso contains this farther direction, that the taxes,. charges, and assessments which might be levied upon the property previous to the making of the conveyance to the future corporation, should all be paid by his executors out of the residue of the estate. The corporation contemplated was,, therefore, to be created during the life-time of those executors, and before the final settlement of the estate. It was not in the testator’s power to incumber the residue of his estate with these charges beyond the period prescribed by the rule of perpetuities. The conveyance was to be made, therefore, within that limit, and it could be made only after the corporation was created.
Hence, it is seen from an exact interpretation of this devise that it was made in favor of a corporation which should be created by Congress within the period permitted by the law for the vesting of an executory devise in the ordinary case of an individual.
We are of opinion, therefore, that the devise in question is valid, and that judgment be for the defendant under the-stipulation filed in the case.